```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


CHET'S SHOES, INC.,               :
                                  :
         Plaintiff,               :
                                  :
         v.                       :     File No. 1:08-CV-197
                                  :
SIDNEY KASTNER,                   :
                                  :
         Defendant.               :
```

             RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION
                                (Doc. 60)

Defendant Sidney Kastner moves for reconsideration of the Court's March 30, 2010 ruling granting summary judgment to plaintiff Chet's Shoes.  Doc. 60.  Chet's Shoes opposes the motion.  Doc. 64.  For the reasons discussed below, defendant's motion for reconsideration is granted.  Upon reconsideration, the Court's prior ruling is affirmed.

I.   Background[1]

Kastner holds two patents for the design of shoe soles with retractable metal studs.  Chet's Shoes is in the business of selling industrial and outdoor footwear, including two models of studded rubber overshoes.  In 2006, Kastner initiated correspondence with Chet's Shoes, alleging Chet's two rubber overshoe products ("the Accused Products") infringed his patents.

---

[1] This order includes only a brief description of the case; further detail can be found in the Court's ruling on summary judgment.  See Doc. 56.

Chet's Shoes subsequently filed this lawsuit, arguing the Accused Products do not infringe Kastner's patents.

After briefing on claim construction, Chet's Shoes and Kastner both moved for summary judgment.  On March 30, 2010, the Court denied Kastner's motion and granted summary judgment in favor of Chet's Shoes.  In so ruling, this Court found the word "retract" in Kastner's patents should be interpreted to require true retraction — i.e., a metal stud actually sliding up into the sole, such that the tip of the stud becomes flush with the immediately surrounding rubber.  The Court then found Kastner had failed to provide evidence creating a genuine issue of material fact as to whether the Accused Products had studs that retracted.

Kastner now moves for reconsideration, arguing the Court's award of summary judgment was in error.  Doc. 60.  Chet's Shoes, in turn, has filed a motion for attorney's fees, Doc. 62, which is dealt with in a separate order.

II.  Standard of Review

"A 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment." Auto Servs. Co. v. KPMG, LLP, 537 F.3d 853, 855 (8th Cir. 2008). In the past, motions for reconsideration were considered Rule 59(e) motions if filed within ten days of the judgment, and Rule

60(b) motions if filed thereafter.  See, e.g., United States v. Clark, 984 F.2d 31, 32 (2d Cir. 1993).  Because the deadline for filing Rule 59(e) motions was recently extended to 28 days, the dividing line for classifying motions for reconsideration has presumably shifted out to 28 days as well.  See Fed. R. Civ. P. 59(e) (Dec. 1, 2009 amendments).  Here, judgment was entered on March 30, 2010, and Kastner filed his motion for reconsideration on April 13, 2010.  See Doc. 57; Doc. 60.  The motion is accordingly treated as a Rule 59(e) motion to alter or amend a judgment.

Under Rule 59(e), reconsideration "is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." Range Rd. Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (internal quotation omitted); accord Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (internal quotation omitted).  The motion should not be granted, however, where the moving party seeks to relitigate issues already considered thoroughly by the court.  See Shrader, 70 F.3d at 257;

Range Rd., 90 F. Supp. 2d at 391-92.  When a party merely disagrees with the previous court decision, such disagreement should be resolved in the "normal appellate process," not in a motion for reconsideration.  NL Indus., Inc. v. Comm'l Union Ins. Cos., 938 F. Supp. 248, 250 (D.N.J. 1996).

In a Rule 59(e) motion for reconsideration, parties may present newly discovered evidence, if it was unavailable at the time the court made its original decision.  See, e.g., In re Prince, 85 F. 3d 314, 324 (7th Cir. 1996).  Yet "a motion to alter the judgment may not be based on evidence that was available when the district judge took the motion for summary judgment under advisement but that was not presented then." Navarro v. Fuji Heavy Indus., Ltd., 117 F.3d 1027, 1032 (7th Cir. 1997).

III. Discussion

Kastner argues the Court erred at the stage of claim construction by defining the term "retract" narrowly.  He also presents new evidence which, he contends, shows a genuine issue of material fact as to whether the studs in the Accused Products "retract," and he argues it was therefore error for the Court to grant summary judgment to Chet's Shoes.  Because the parties have presented significant arguments and evidence, the Court grants reconsideration.  The Court reaffirms its conclusions, however, on reconsideration.

A.   Claim Construction of the Term "Retract"

Kastner accurately observes "the Court has limited the claims of the '283 patent to a stud that retracts until the tip of the stud is flush with the immediately surrounding surface of the sole or cleat."  Doc. 65 at 3.  Arguing this claim construction was error, Kastner points to the language of the '283 patent, which only requires the tip of the stud to be "substantially at the plane of said bottom surface of said sole," rather than flush with the immediately surrounding bottom surface.  Doc. 45-4 at 6 ('283 Patent).  He then asserts no prior art existed to require a narrower definition of "retract" than that contained in the patent itself.  Kastner maintains he was the first to invent a stud capable of moving inward, so it was not necessary to limit the type of movement covered by his patents to true retraction (i.e., actually sliding or pulling up into the immediately surrounding rubber).  See Doc. 60-1 at 3-5.

Despite Kastner's arguments, the Court declines to alter its conclusion as to the proper claim construction of "retract."  As explained in the ruling on summary judgment, the narrower definition of "retract" is necessary to avoid prior art and invalidation on obviousness grounds.  See Doc. 56 at 19-21.  Common sense and a trip to the local outdoor outfitters will reveal that studded shoes with flexible rubber bottoms have long existed — a fact which Kastner admitted in his patent

application.  See Doc 24-2 at 18 (Response to Official Action at 4) (acknowledging various prior art, including Olsson's patent for studs embedded in a resilient sole).  For many of these studded shoes, the resilient material of the sole allows the sole to deform when weight is distributed unevenly, when the terrain underfoot is uneven, or when the sole tread has irregular high-relief features.  Due to the sole's deformation in these situations, one or more studs may end up vertically displaced (along with the surrounding area of sole) such that the stud tip is momentarily level with the rubber surface elsewhere on the sole.  This kind of stud movement, due to asymmetrical pressure and flexing of the sole material, is nothing unusual, and is inherent in having a resilient sole.  Cf. Doc. 24-9 (patent describing Olsson's method of fixing studs into a rubber or plastic sole, in which the sole itself remains free to flex or deform under pressure).

Kastner would have the Court interpret the term "retract" in his patents very broadly.  In his view, a stud embedded in a flexible sole "retracts" if the sole can be deformed in any way such that the stud moves upward and its tip comes into line with the rubber surface somewhere — anywhere — on the sole.  See, e.g., Doc. 60-1 at 4.  This claim construction is too broad because, as noted above, it would encompass existing studded shoes with resilient soles and would place Kastner's patents in

danger of invalidity for obviousness.  See 35 U.S.C. § 103.  For this reason, in ruling on summary judgment the Court construed the term "retract" in Kastner's patents more narrowly.  See Doc. 56 at 20; Modine Mfg. Co. v. U.S. Int'l Trade Comm'n, 75 F.3d 1545, 1557 (Fed. Cir. 1996) (noting claims "should when reasonably possible be interpreted so as to preserve their validity"), overruled on other grounds, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F.3d 558, 574 (Fed. Cir. 2000) (en banc).  This was explained in the previous ruling and remains true.

   Although Kastner now complains about the Court limiting his patents to studs that truly "retract," during the course of prosecuting his patent he explicitly acknowledged the narrower meaning of the term.  In particular, he distinguished prior art by clarifying the term "retract" in his patent meant depressing the stud within the surrounding rubber of the sole:  "While Olsson does disclose a metal stud the anchoring portion of which appears to be surrounded by a material that may be resilient, there is no disclosure whatsoever in Olsson that the stud is depressed within the body of the sole during wear of the shoe."  Doc. 24-2 at 18 (Response to Official Action at 4) (emphasis added).  This shows Kastner himself distinguishing true retraction, where the stud actually slides or presses up into the surrounding sole material, from mere sole deformation, where the

stud moves upward along with a surrounding area of sole rubber. Thus, in ruling on summary judgment, this Court was simply reading the term "retract" in the way Kastner conceded it must be read.  The Court required studs to actually slide or press up into the surrounding sole material, such that the tip of the stud becomes flush with the immediately surrounding bottom surface of the sole — which is nothing more than a detailed way of saying the studs must pull up into a position completely "within the body of the sole."

Kastner further confirmed this interpretation of "retract" in the course of distinguishing other prior art in his patent application.  The Tomuro patent describes a resilient sole with spikes that are completely retracted until the wearer places weight on the sole.  See Doc. 24-11.  In their retracted position, the spikes are wholly within the rubber sole, such that the spike tips are flush with the immediately surrounding bottom surface of the sole.  See id. at 2 (illustrations).  Noting the type of stud movement in the Tomuro shoes — from this fully withdrawn position to a protruding position — Kastner wrote, "Tomuro, it is submitted, performs in precisely the opposite way from . . . [my] invention."  Paper 24-2 at 16 (Response to Official Action at 2).  Kastner thus envisioned his own studs retracting to an end-point similar to Tomuro's starting point — where the stud tips would be flush with the immediately

surrounding rubber surface.  He cannot complain, then, when the Court construes "retract" in precisely this way and requires a retracted position similar to that of Tomuro's retracted spikes.

For the above reasons, as well as those contained in the March 30, 2010 ruling on summary judgment, the Court's claim construction of the word "retract" was correct, and is not altered on reconsideration.

    B.    <u>New Evidence Purportedly Showing Retraction</u>

Kastner submits eleven new exhibits with his motion for reconsideration.  <u>See</u> Docs. 60-3 to 60-13.  He argues these exhibits create a genuine issue of fact as to whether the studs in the Accused Products retract in a strict sense, therefore making the Court's grant of summary judgment inappropriate.  Doc. 60 at 8.

As a threshold matter, the Court must decide whether to consider Kastner's exhibits.  "Newly discovered" evidence is permitted on a motion for reconsideration, <u>In re Prince</u>, 85 F.3d at 324, but previously-available evidence is not, <u>Navarro</u>, 117 F.3d at 1032.  Here, Kastner argues the exhibits should be allowed because until the Court's ruling on summary judgment, he had no way of knowing the Court expected him to show retraction in a strict sense.  Doc. 60 at 7.  The Court need not accept the exhibits; it could easily hold Kastner should have had a more realistic view of the scope of his patent (especially given his

statements noted above), and that he missed his chance to submit these exhibits in the original summary judgment filings.  See Navarro, 117 F.3d at 1032; Giora George Angres, Ltd. v. Tinny Beauty & Figure, Inc., No. 96-1507, 1997 WL 355479, at *1 (Fed. Cir. 1997) (unpublished) ("[T]he district court did not abuse its discretion in not considering 'new evidence' proffered after summary judgment was granted, since it could have been produced prior thereto upon the exercise of due diligence.").  The Court will admit the new exhibits, however, in the interests of completeness.

Even considering Kastner's new exhibits, the Court does not change its conclusion that the Accused Products' studs do not retract within the meaning of Kastner's patents.  Several of the exhibits are merely illustrative diagrams of the Accused Products.  See Doc. 60-3; Doc. 60-4; Doc. 60-5; Doc. 60-11; Doc. 60-12.  The Court already had the opportunity to physically examine the Accused Products, so these exhibits show nothing new.

Two of the exhibits are photographs of Kastner's clamp tests, in which he squeezes a sole from one of the Accused Products and attempts to demonstrate retraction.  The first of these shows the heel portion of a sole, with a clamp arm pressing down on one of the studs located in the raised heel section.  Doc. 60-6.  This photograph is ambiguous at best.  To the extent it shows anything, it appears not to show retraction, as the

stud's head can still be seen protruding from the rubber of the raised heel section.  The second clamp test photograph actually confirms why the Court's strict definition of "retract" is important.  In this photograph, a clamp arm is pressing down on a stud embedded in a cleat.  Doc. 60-7.  Kastner argues the photograph shows the stud fully retracting, "such that the tip of said metal stud is flush with the tip of the rubber cleat immediately surrounding said metal stud."  Doc. 60-2 ¶ 16.  The image, however, shows no such thing.  Rather than the stud sliding up into the cleat, the stud has moved along with the cleat, and the entire cleat is bending sideways and pressing into the flat portion of the sole.  The stud does not appear to have changed position significantly vis-a-vis the cleat:  a lighter mark between the clamp and the cleat indicates the presence of the still-extended stud, and the cleat's awkward bent-over position confirms the stud remains protruding from the cleat's surface.  Had the stud retracted to a point where its tip were flush with the cleat's surface, there would be nothing propping open the space between cleat and clamp in this photograph; the cleat would be standing up straight and squarely contacting the clamp surface.  Although the stud has moved to a new position where its tip is level with the surface of other cleats elsewhere on the sole, it obviously has not "retracted" in the relevant sense.

Finally, Kastner submits several prints made by rubbing shoe polish on the Accused Products and stepping on white paper. Three of these impressions focus on the cleated front portion of the sole. Doc. 60-9; Doc. 60-10; Doc. 60-13. In each, it is clear the cleat in question has bent sideways to make contact with the paper, and the stud embedded in that cleat remains protruding from the cleat face. As discussed above, this kind of movement does not constitute true retraction. One of the impressions focuses on the heel portion of the sole, Doc. 60-8, and presents a slightly less clear situation. The sole rubber immediately surrounding the studs does not appear to make contact with the ground, but other heel rubber in the vicinity does touch the ground. The Court finds this print is ambiguous, however, and does not present "more than a mere scintilla of favorable evidence" for Kastner. Ezuma v. City Univ. of N.Y., 367 F. App'x 178, 179 (2d Cir. 2010) (summary order) (internal quotation omitted).

Having addressed all of Kastner's new exhibits,[2] and finding none of them creates a genuine issue of material fact as to

---

[2] Kastner also attempts to re-argue the import of two exhibits submitted with his original motion for summary judgment. Doc. 60-2 ¶¶ 9-10. The Court already considered these exhibits, however, in reaching its decision on summary judgment, and they need not be re-examined. See Baldwin v. Layton, 300 F. App'x 321, 323 (5th Cir. 2008) (per curiam) ("A Rule 59(e) motion is not a vehicle for rehashing evidence . . . ." (internal quotation omitted)).

whether the Accused Products have truly retractable studs, the Court concludes that "a fair-minded jury could [not] return a verdict" for Kastner on infringement.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Accordingly, the Court's prior award of summary judgment to Chet's Shoes is reaffirmed.

IV.  Conclusion

Defendant Sidney Kastner's motion for reconsideration is granted.  Upon reconsideration, the prior ruling is affirmed.

Dated at Brattleboro, in the District of Vermont, this 16th day of August, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge